## THE STATE, FREDERICK R. WILKINSON ET AL., PROSECUTORS, v. THE CITY OF TRENTON.

1.  Under the charter of the city of Trenton, the authority of the council to appoint commissioners, lay out streets, and make assessments of damages therefor, is complete. When the land-owner does not complain, if others are allowed to object, it should be before the commissioners have acted, provided that the notice required by the charter of their meeting had been given.
2.  The oath taken by the commissioners being a substantial compliance with section seventy-eight of the charter, held to be sufficient.
3.  The sufficiency of notice of the meeting of the commissioners considered.
4.  The law does not require assessments for damages and benefits to be made separately. It is sufficient if it appear that both were duly considered in making the assessment.

This is one of eleven *certioraris* removing the proceedings in laying out a street in Trenton, between Warren and Quarry streets, and the assessment therefor. The determination of one includes all.

For prosecutors, *F. Kingman* and *I. W. Scudder.*

For city, *J. S. Aitkin* and *James Wilson.*

BEDLE, J. The court will only notice such objections as are of the most importance.

1. That the council did not treat with the owners of land taken, who were under no legal incapacity. The charter (*Laws* 1866, *p.* 364, §§ 76–7,) is very peculiar. It may be seriously questioned whether any assessment for damages or benefits can be made, unless there is a legal incapacity or absence of some owner, or inability to make a proper contract where those causes do not exist. However that may be, the true construction of the act allows the mayor to appoint the commissioners on proper application, whenever, in the case of any owner, such disqualification or inability exists. The

jurisdiction to appoint is complete in either of such cases. Even after the appointment, I think that the council could treat with any owner, and the commissioners be obliged to adopt, in their estimate, the result of such negotiation; and even if the effort to negotiate is imperative when the jurisdictional fact exists, which is very doubtful, there is nothing in these proceedings to show that the council did not do their duty in this respect. Further, the land-owner does not complain, and if others are to be allowed to object, it should be before the commissioners have acted, provided the notice required by the charter of their meeting had been given.

2. That the order appointing the commissioners did not sufficiently prescribe their duties. The answer is, that it refers to the ordinance to lay out, with a sufficient description to fairly identify it. It also recites the resolution and application of the council to the mayor, and makes the appointment of commissioners, directing them to make a just and true estimate and assessment and report thereof, *as prescribed by law.* The application specifies the street to be laid out, and the land or real estate intended to be taken, according to section seventy-seven. These appear in the order, and any omissions in following the further language of that section, or of section seventy-eight, are cured by the reference, " as prescribed by law."

3. That the commissioners did not take the oath as in section seventy-eight. That section requires an oath " fairly and impartially to execute the duties imposed upon them by this act." The oath actually taken was, " that they will fairly and impartially execute the duties imposed upon them by the above appointment, and make a just and true report, according to the best of their skill and judgment." This latter part is surplusage. There is no analogy between the oath prescribed by section seventy-eight and that with reference to surveyors of the highways, so far as the strictness with which the courts, previous to a recent act, required the surveyors to comply with their statutory oath. The peculiar language of the township act made a failure to take the oath provided, a

refusal to serve, and a consequent vacancy in the office. The oath taken by these commissioners is a substantial compliance with section seventy-eight. Instead of saying, "imposed upon them by this act," it says "imposed upon them by the above appointment." The appointment required them to execute the duties of the act, and the oath is a complete equivalent for that, and means the same thing.

4. That the notice of the meeting of the commissioners was insufficient. This notice was given by the mayor, as was his duty. The object of it is, that the parties interested may appear and be heard before the commissioners. The ordinance to lay out the street had been regularly passed, the proper notice of the intention of the council to make the improvement having been given, and an opportunity had, according to law, for persons to present their objections. All persons, then, were concluded, so far as the passage of the ordinance was concerned, by reason of any want of notice of what the improvement would be. The notice recites the fact of the appointment of the commissioners, and states the general purpose. It also gives a description of the street sufficiently definite—fixes the time and place when the oath of the commissioners will be taken, and where they would meet, and when, to hear all parties interested, and further states that, after having viewed the land, they would make a just and true estimate and assessment, as required by law. This was a fair and substantial notice, and could not be more definite, so far as those to be assessed for benefits were concerned, as that matters had yet to be determined, and so far as the owners of land to be taken were concerned, they could not be mistaken, and if they were, these prosecutors, who are none of them, so far as we can see from the case, cannot complain.

5. That the assessment was unequal, unjust, and unfair. There are no facts before us to sustain this reason, as against the judgment on the commissioners.

6. Because persons assessed for damages for land taken are not assessed for benefits. It is evident that, in making the assessment of damages, that the commissioners in fact re-

garded the benefits and the charter does not require these to be assessed separately, so far as they relate to the owner whose land is taken. Section seventy-seven directs that, in estimating and assessing the damages, the commissioners shall have due regard, as well to the value of the land or other real estate, as to the injury or benefit of the owner or owners thereof. This is certified by the commissioners in their report. Neither is it necessary that the value of the land should be separately reported—the charter does not require it.

7. That it does not appear upon the face of the report that the whole costs of the improvement were assessed. This proceeding was to lay out and open a street, The charter requires the commissioners to make a just and true estimate and assessment of the damages, and the report, on its face, is a compliance with that. In the case of *The State, Gleason, pros.; v. Bergen*, 4 *Vroom* 72, the charter of Bergen, in terms, required the commissioners to *estimate the whole costs of the improvement* in making a preliminary assessment. In other cases referred to by counsel of prosecutors, the charters required also, in terms, that the commissioners *should examine the whole matter.* In these cases it was necessary that the report should show a compliance with the peculiar features of the charters.

8. That the commissioners did not report that assessments for benefits were made upon *all* the lots which, in their opinion, would be benefited. As under the last head, it is a sufficient answer to say that the charter does not require it. If all that the language of the act directs is embodied in the report, it is sufficient, and then if the commissioners have adopted any wrong principle in their action, or failed to do their duty, it should be shown. The true construction of section seventy-seven undoubtedly is, that benefits must be assessed upon all the lots that, in the opinion of the commissioners, will be benefited; but if the commissioners have, in all material parts, adopted the language of the law, it will be presumed, till the contrary appears, that their duty has been performed according to its proper legal meaning. The report

State, Wilkinson et al., pros., v. City of Trenton.

in this case does not say that these commissioners assessed *all* the lots in their opinion benefited, but it does say that they made "a just and true estimate and assessment of damages and benefits which will be sustained and derived on the laying out and opening the said street as aforesaid," &c.; and also "that in the laying out and opening of the proposed street as aforesaid, the following lots, or subdivisions of lots, and the owner and owners thereof, will be benefited, in our opinion, by said improvement;" and then proceeds to make an assessment to different owners which they determine will be benefited, &c., having justly and fairly considered the amount of such benefit to the said lots, specifying them, &c. Section seventy-seven directs that the commissioners shall assess the amount, &c., "fairly and justly upon such lots, or subdivisions of lots, as, in their opinion, will be benefited by said improvement, specifying in such assessment such lots or subdivisions of lots," &c. The report virtually follows the language of the act, and I think it would be too strict to expect of the commissioners that they should do more. This objection is, no doubt, based on the case of *The State, Abrey, pros.,* v. *Cannon,* 4 *Vroom* 222. There the return of surveyors, in laying out a road, was set aside for several reasons, and one was, that the return did not show a compliance with the fifteenth section of the act of March 23d, 1859. *Nix. Dig.* 841.* That directs the surveyors to assess the damages as equitably as may be upon the owners of land in the neighborhood of the road which, in their opinion, will be benefited thereby, as nearly as may be, in proportion to the benefits. The opinion says that they do not certify that those (the lands assessed) are all the lands in the neighborhood which, in their opinion, would be benefited, nor that they assessed them according to the benefits. This latter objection was sufficient to make the return illegal, because the law provided that the assessment should be made, as nearly as may be, in proportion to benefits, and that did not appear on the return. The other objection to that return, although recognized as valid in the opinion, has too much strictness in requiring the surveyors

* *Rev., p. 1016, § 115.*

to report more than is prescribed in the language. It was not necessary to so hold in deciding that point as decided, and need not, therefore, be followed.

Reference has now been made to all the points material, and on none of them can these proceedings he reversed. But if, in any of them, there were found irregularities, these *certioraris* should be dismissed on account of such gross laches on the part of the prosecutors in obtaining their writs, as to make it unjust to the city to sustain them.

The judgment of the court is, that the proceedings be affirmed.

Justices DALRIMPLE and SCUDDER concurred.

AFFIRMED, 7 *Vr.* 499.